# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WAYNE A. PORRETTI, | Case No. 2:17-cv-01745-RFB-CWH |
| Plaintiff, | |
| v. | **ORDER** |
| DZURENDA, *et al.*, | |
| Defendants. | |

Before this Court is Plaintiff's Motion for Preliminary Injunction. ECF Nos. 32, 33. Plaintiff is an inmate incarcerated in the Nevada Department of Corrections and currently housed at Lovelock Correctional Center. Plaintiff alleges that he is being denied necessary anti-depressant and anti-psychotic medication and, as a result, is suffering from depression, paranoia, delusions, and hearing voices. For the reasons stated below, the Court grants Plaintiff's Motion for Preliminary Injunction and orders that Defendants provide Plaintiff a medical evaluation to assess Plaintiff's current medical condition and needs.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the initial complaint on June 23, 2017 and the operative complaint on September 26, 2018. ECF Nos. 1, 16. On January 9, 2019, Plaintiff filed the instant Motion for Preliminary Injunction. ECF Nos. 32, 33.

The Court held a hearing regarding the Motion for Preliminary Injunction on January 18, 2019. ECF No. 44. The Court continued the hearing to receive testimony from psychiatrist Carla Carroll, M.D., an employee of the Nevada Department of Corrections.

///

The Court held a second hearing on January 29, 2018 and received testimony from Dr. Carroll. ECF No. 48. On January 30, 2019, the Court issued an order requesting additional medical records and referring Plaintiff to the pro bono program for appointment of counsel. ECF No. 50.

On April 9, 2019, the Court held a status conference. ECF No. 103. The Court granted the Motion for Preliminary Injunctions for the reasons stated on the record and further explained in this order. The Court stated that it would grant relief in the form of a medical evaluation of Plaintiff, with Defendants to cover costs. The Court expressed its willingness to appoint psychiatrist Norton Roitman, M.D., based on his treatment history with Plaintiff and his established record as a medical expert with this Court. The Court acknowledged Defendants objection to Dr. Roitman and permitted Defendants to submit a list of contracted experts and their credentials by April 18, 2019 as potential alternative avenues for an objective evaluation.

**II.     FACTUAL FINDINGS**

The Court has reviewed Plaintiff's medical records and received testimony from psychiatrist Carla Carroll, M.D., an employee of the Nevada Department of Corrections. The medical records submitted in the record are incorporated by reference here. The Court makes the following factual findings based upon the entire record, including medical records and testimony. The Court incorporates by reference its findings on the record at the hearing on April 9.

Prior to Plaintiff's incarceration, Plaintiff was treated by Dr. Roitman. Dr. Roitman prescribed Seroquel and Wellbutrin to manage Plaintiff's mental health symptoms, and these prescriptions were initially continued by prison doctors upon Plaintiff's incarceration. Dr. Roitman found these medications to be medically necessary given Plaintiff's mental health diagnoses. Dr. Roitman found Plaintiff to be a credible reporter of his symptoms and the effectiveness of the medications prescribed to Plaintiff. The Court credits these findings and observations based upon the record and the Court's own observations.

Defendants discontinued Plaintiff's prescriptions for Seroquel and Wellbutrin on May 31, 2017 absent the recommendation of a psychiatric health care provider to do so. Defendants had

no medical basis for discontinuing the medications. These medications were allegedly discontinued due to their potential for abuse. However, the Court is unconvinced of this alleged motivation. Defendants had no information that Plaintiff had ever abused his medications or misused them as contraband. Plaintiff was not medically monitored when his medications were discontinued although he should have been to provide adequate medical care for his mental health ailments. Plaintiff was not seen by a mental health provider until September 13, 2017, at which time he was prescribed alternative medications. Plaintiff has not received any Seroquel or Wellbutrin since the discontinuation of these prescriptions in May 2017.

On January 29, 2019, the Court obtained testimony from Dr. Carroll. Dr. Carroll testified that, in her opinion, Seroquel and Wellbutrin are not medically necessary for Plaintiff. She diagnosed Plaintiff with only personality disorder, Tourette's syndrome, and malingering and opined that Plaintiff has no other diagnoses.

The Court now finds that Dr. Carroll's limited diagnoses of Plaintiff and her medical opinion that Seroquel and Wellbutrin are not medically necessary for Plaintiff are not credible as compared to the diagnoses and prescriptions in Plaintiff's medical record. The Court finds that Dr. Carroll did not have or take the necessary time to complete an adequate and complete examination of Plaintiff and that her records review appears to have been tailored to supporting the Defendants' existing position that Plaintiff does not need the medications he had been previously prescribed. The Court notes that Dr. Carroll is an employee of NDOC.

Plaintiff's medical record includes credible and documented diagnoses of depression, attention deficit disorder, obsessive compulsive disorder, schizoaffective disorder or paranoid schizophrenia, personality disorder, and Tourette's syndrome issued by in-person treating physicians. Plaintiff was prescribed Seroquel and Wellbutrin by Dr. Roitman, who treated Plaintiff in person for years. Dr. Carroll's summary dismissal of all of Plaintiff's diagnoses except personality disorder and Tourette's syndrome is not substantiated by Plaintiff's comprehensive medical history involving in-person treatment.

Dr. Carroll's testimony that Plaintiff exhibits addictive, drug-seeking behavior is also not substantiated by the record. The record reflects some self-reported drug and alcohol use in the

distant past, but the Court finds no formal diagnosis reflecting that Plaintiff has or had an addiction, no objective medical documentation of drug or alcohol abuse, and no self-reported drug or alcohol use in the past several years. The prison medical records that document Plaintiff's "drug-seeking" behavior are limited to the context of Plaintiff seeking his prescribed doses of Wellbutrin and Seroquel when deprived of these medications while incarcerated.

The Court notes that Dr. Carroll has met with Plaintiff on only one occasion and only over videoconference for a limited period of time. Dr. Carroll has never interacted with Plaintiff in person. And though Dr. Carroll has been Plaintiff's treating physician for several months, the Court finds that as of April 19, 2019, Dr. Carroll has not met with Plaintiff in person or via video conference since the single visit in November 2018, though Plaintiff has sought to meet with her.

The Court also does not find persuasive Dr. Carroll's statements that Plaintiff had not demonstrated observable symptoms of mental illness or the diagnoses of his previous physicians. These statements are unpersuasive when considering the medical records and from the Court's own observations of Plaintiff over videoconference and telephone on the three occasions that the Court has held hearings thus far. The Court has observed that Plaintiff is consistently agitated, pacing, stuttering, involuntarily twitching and frantic. The Court's observations are consistent with the nature and severity of the diagnoses in Plaintiff's medical record and with Plaintiff's allegations that he is not receiving medications that manage his symptoms.

The Court finds that Plaintiff is credible, based upon the findings of prior credible professionals, in his description of his symptoms, including his experiences of paranoia, delusions, and hearing voices. The Court also finds that Plaintiff's efforts to secure Wellbutrin and Seroquel are based on Plaintiff's bona fide belief that he will be helped by these medications. The Court further finds that Plaintiff's medical records support this Court's finding that he is a credible reporter of his symptoms and the effectiveness of his medications.

**III.    LEGAL STANDARD**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter v. Natural Res. Def. Council,</u>

Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

**IV. DISCUSSION**

    a. **Motion for Preliminary Injunction**

The Court finds that Plaintiff satisfies the factors justifying preliminary injunctive relief. In its analysis below, the Court also addresses Defendants' Motion for Reconsideration of This Court's Order (ECF No. 62), in which Defendants argue that Plaintiff's Motion for Preliminary Injunction should be denied. For the reasons below, the Court denies Defendants' motion.

    i. **Likelihood of Success on the Merits**

To establish an Eighth Amendment claim against prison officials for medical treatment, an incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has established a two-part test for deliberate indifference: first, the plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted)). Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. (quoting Farmer v. Brennan, 511

U.S. 825, 837 (1994)).  The defendant's indifference to or interference with the plaintiff's medical care must be intentional; negligence will not suffice to state a deliberate indifference claim.  <u>Jett</u>, 439 F.3d at 1096.  Further, the plaintiff must show that harm resulted from the defendant's indifference, although the harm need not necessarily be substantial.  <u>Id</u>.

The Court finds that Plaintiff demonstrates a likelihood of success on the merits under this standard.  Plaintiff has an ongoing and severe mental illness.  He experiences severe symptoms including paranoia and delusions.  Defendants do not contest that Plaintiff is mentally ill, nor that they have been aware of his ongoing illness.

The Court finds that Plaintiff has established a likelihood of success on the merits that Defendants have been deliberately indifferent in their response to Plaintiff's ongoing mental health symptoms.  Defendants discontinued Plaintiff's Seroquel and Wellbutrin on May 31, 2017 absent the recommendation of a psychiatric health care provider to do so and absent any evidence whatsoever that Plaintiff himself was abusing, selling, or otherwise misusing these medications.  Though Defendants offered alternative medications, Defendants ignored Plaintiff's credible and documented explanations of his prior negative responses to such alternatives.  Defendants have not provided adequate evaluation or monitoring of Plaintiff and his conditions.  Dr. Carroll conducted exactly one medical teleconference visit with Plaintiff and has provided no medical visitation or treatment since November 2018.  She has not seen Plaintiff again despite Plaintiff's ongoing communication of his persistent symptoms and his request for additional visitation.

Defendants argue that Plaintiff cannot succeed as a matter of law because Defendants have provided alternative medications and because Dr. Carroll's recommendation does not support the ongoing provision of Seroquel and Wellbutrin.  Deliberate indifference cannot be shown where a defendant's actions are based on "a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances."  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).  However, the Court has found that Dr. Carroll had not provided to date a credible medical judgment.  The Court finds that Defendants did not rely upon a medical judgment when they decided to cease Plaintiff's medications.  Moreover, Defendants failed and continue to fail to appropriately monitor, treat and evaluate Plaintiff's symptoms to determine

whether a medical judgment could support the efficacy of their alternative course of treatment or other courses of treatment.

### ii. Irreparable Harm

Plaintiff demonstrates a substantial likelihood of irreparable harm. Plaintiff's psychotic symptoms are persistent and severe. The medical record reveals a history of suicide attempts. So long as Plaintiff's symptoms remain unmanaged, Plaintiff's health and physical safety are at risk.

Defendant argues that Plaintiff voluntarily agreed to delay the matter by requesting appointment of counsel, suggesting that his harm is not irreparable. Defendant mischaracterizes the length of the delay to which Plaintiff consented and the nature of Plaintiff's voluntary agreement. Specifically, when the Court asked Plaintiff whether he "would be able to be okay" for a period of "up to fourteen days" until the Court could schedule a hearing to receive expert testimony, Plaintiff responded: "I . . . I've survived so far." The Court does not construe Plaintiff's request for appointment of counsel as Plaintiff's consent to delay the case further; indeed, Plaintiff has filed approximately twenty motions *pro se* since making the request, as well as several notices and a response to Defendants' motion for reconsideration. Plaintiff filed his complaint less than one month after his Wellbutrin and Seroquel were discontinued, and he has more than diligently prosecuted this action.

### iii. Balance of Equities

The Court finds that the balance of equities tips in Plaintiff's favor. Plaintiff experiences ongoing mental health symptoms and a denial of medical care. This hardship far outweighs any logistical or financial burden on Defendants to provide for a medical evaluation – medical treatment which Defendants are constitutionally obligated to provide. The Court describes the exact nature of the awarded relief in greater detail below. Though the Court finds that Defendants' arguments regarding Plaintiff's potential abuse, sale, or trade of these prescription drugs to be unsubstantiated, the Court notes that it is not ordering the provision of Plaintiff's prescribed drugs at this time.

/ / /

/ / /

####     iv. **Public Interest**

The public interest also favors Plaintiff. The public has an interest in the constitutionally adequate medical treatment of federal prisoners.

###   b. **Nature of Relief Granted**

The Court finds that Plaintiff has been denied adequate medical treatment and that the appropriate preliminary injunctive relief is to order a medical evaluation(s). The results of this evaluation will be provided to the Court and will address (1) whether Plaintiff's prior prescriptions for Seroquel and Wellbutrin are medically necessary in light of his medical history, diagnoses, and present-day symptoms and (2) the existence of and efficacy of alternative treatments.

The Court will hold a separate hearing to determine which provider(s) will conduct the medical examination(s) of Plaintiff. Defendants and Plaintiff will have until April 19, 2019 to submit the names of potential physicians who are not employees of NDOC.

Defendants contest their obligation to cover the cost of the medical evaluation ordered by the Court. The Court finds it appropriate and legal to order Defendants to cover the cost of this evaluation, since Defendants are plainly responsible for the provision of health care to Plaintiff for the duration of Plaintiff's incarceration. See Estelle v. Gamble, 429 U.S. 97, 103 (1976) ("These elementary [Eighth Amendment] principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."). And because the Court has found that Defendants have been deliberately indifferent to Plaintiff's medical needs and have failed provide adequate or sufficient medical treatment to Plaintiff, it is appropriate for Defendants to bear the cost of Plaintiff's medical examination for his ongoing and unmanaged symptoms. Moreover, the ordered examination is not apart from Plaintiff's required treatment by Defendants, but is a part of and consistent with Defendant's constitutional obligation to provide adequate medical treatment to Plaintiff.

/ / /

/ / /

/ / /

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 32) is GRANTED. The Defendants will be required to pay for an independent examination(s) of Plaintiff to determine his medical needs.

**IT IS FURTHER ORDERED** that the parties shall have until April 19, 2019 to submit names of psychiatrists to conduct the exam. These psychiatrists shall not be employees of NDOC.

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration (ECF No. 62) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Letter for Request on Ruling of Motion to Appoint Counsel (ECF No. 49) is DENIED as moot; the Court has referred Plaintiff to the Court's pro bono program (ECF No. 50).

**IT IS FURTHER ORDERED** that Plaintiff's Request for Clarification (ECF No. 54) is GRANTED. The Court now clarifies, in light of its resolution of the Motion for Preliminary Injunction and the ongoing issues in this case, that Plaintiff is referred to the Court's pro bono program for the duration of the case.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Production (ECF No. 57) is GRANTED. The Court incorporates by reference its order dated April 9, 2019 (ECF No. 103), in which the Court directed Defendants' counsel to arrange for Plaintiff to receive the Lakes Crossing records by April 12, 2019.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Order to Show Cause re Appointment Expert Witness (ECF No. 61), Motion to Consider Moving Up Preliminary Injunction Hearing (ECF No. 76), Motion to Disregard Defendant Response to ECF Doc 61 (ECF No. 79), and Motion to Exhibit Preliminary Injunction (ECF No. 84) are DENIED in light of the Court's issuance of a preliminary injunction and its discussion as to the scope of the relief appropriate at this time. The motions are denied without prejudice to the extent Plaintiff may submit requests for additional relief after the relief described in the instant order has been issued and the Court can evaluate the results.

///

**IT IS FURTHER ORDERED** that Plaintiff's Request for 60 Day Continuance to Respond to Defendants' Motion (ECF No. 64) is DENIED as moot.

DATED: April 12, 2019.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**