UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WAYNE PORRETTI, | Case No. 2:17-cv-01745-RFB-DJA |
| Plaintiff, | **ORDER** |
| v. | |
| JAMES DZURENDA, et al, | |
| Defendants. | |

## I.   INTRODUCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction. ECF Nos. 32, 33. Plaintiff is an inmate incarcerated in the Nevada Department of Corrections ("NDOC") and currently housed at High Desert State Prison.  Plaintiff alleges that he is being denied necessary anti-depressant and anti-psychotic medication and, as a result, is suffering from depression, paranoia, delusions, and auditory hallucinations.  For the reasons stated below, the Court grants Plaintiff's Motion for Preliminary Injunction and orders that Defendants provide Plaintiff with the medications he was receiving prior to May 2017, Wellbutrin and Seroquel, in accordance with the prescribed care of Dr. Norman Roitman. Additionally, the Court orders that the NDOC provide a treatment plan to the Court for approval that incorporates these medications and enumerates the manner by which NDOC physicians will implement this treatment plan.

## II.   PROCEDURAL BACKGROUND

Plaintiff filed the initial complaint on June 23, 2017 and the operative complaint on September 26, 2018.  ECF Nos. 1, 16.  On January 9, 2019, Plaintiff filed the instant Motion for Preliminary Injunction.  ECF Nos. 32, 33.

The Court held a hearing regarding the Motion for Preliminary Injunction on January 18, 2019. ECF No. 44. The Court continued the hearing to receive testimony from psychiatrist Carla Carroll, M.D., an employee of NDOC.

The Court held a second hearing on January 29, 2019 and received testimony from Dr. Carroll. ECF No. 48. On January 30, 2019, the Court issued an order requesting additional medical records and referring Plaintiff to the pro bono program for appointment of counsel. ECF No. 50. Plaintiff was appointed current counsel on June 12, 2019. ECF No. 160.

On April 9, 2019, the Court held a status conference. ECF No. 103. The Court granted the Motion for Preliminary Injunction for the reasons stated on the record and further explained in its Order. ECF No. 106. The Court granted relief in the form of a medical evaluation of Plaintiff, with Defendants to cover costs. The Court stated in its Order that the psychiatrists submitted by the parties to conduct the evaluation shall not be employees of NDOC. Id. at 9. Defendants appealed this Order on May 13, 2019 (ECF No. 133) and that appeal was denied as moot on August 20, 2019 (ECF No. 191).

On April 19, 2019, Defendants proposed that Dr. Wade Exum conduct the medical evaluation. ECF No. 113. On May 8, 2019, the Court ordered that both Dr. Exum and Dr. Norman Roitman, who had previously treated Plaintiff, would conduct independent medical evaluations of Plaintiff and submit written reports to the Court addressing: a) Plaintiff's current diagnosis including a review of his medical history; b) whether Plaintiff's prior prescriptions for Wellbutrin and Seroquel are medically necessary given his current diagnosis; c) the existence and efficacy of potential alternative medications and/or treatments; and d) requirements for Plaintiff's future care. ECF No. 130 at 2.

An evidentiary hearing on these reports was held on September 19, 2019. ECF No. 204. Both Dr. Exum and Dr. Roitman testified as to their findings. Id. A continuance of the hearing was set for November 6, 2019 in which the parties were ordered to present evidence regarding Plaintiff's past and current course of treatment and argument regarding the recommended course of treatment moving forward, with detail as to how the treatment would be administered and any modifications to Plaintiff's current medical regime. ECF No. 207. At that hearing the Court heard

further argument from the parties and ordered that the parties file a joint proposed discovery plan within ten days. ECF No. 216.

### III.   FACTUAL FINDINGS

The Court incorporates by reference its factual findings in its previous Order granting the Preliminary Injunction with relief in the form of the medical evaluations conducted by Drs. Exum and Roitman. ECF No. 106 at 2-4. Specifically, the Court highlights its previous findings as to Dr. Carroll's lack of credibility and Plaintiff's credible description of his symptoms as supported by the evaluations of prior medical professionals established in Plaintiff's medical records. Id. at 4.

Turning to the Court's additional factual findings, upon consideration of all of the subsequent testimony and documentary evidence, the Court finds that Dr. Roitman's evaluation and treatment proposal are credible and appropriate, and that Dr. Exum's report and proposed treatment plan are not credible as they are not based upon the relevant standard of care or appropriate and accepted methods of psychiatric or psychological evaluation. The Court finds that Dr. Exum provided testimony and recommendations that were biased towards the litigation position of NDOC. Dr. Exum is a contractor with the NDOC—working at NDOC facilities at least three days per week. Dr. Exum's entire practice is based upon his contract work with NDOC.

The Court finds that Mr. Porretti's medical records are over <u>700 pages long</u>. <u>His records span more than fifteen years.</u> He has undergone diagnostic evaluations by psychiatric professionals on at least fifteen different occasions.

The Court finds that the reports submitted by the two experts differed materially both in scope and in detail. Dr. Roitman's report was <u>twenty pages</u>, detailing its potential limitations, the sources of information used to compose the report, Plaintiff's mental health history, including a psychiatric history that considered the diagnoses and prescribed treatment made by former providers, family history, medical history, substance use history, Dr. Roitman's mental status examination, his diagnostic impression, and a ten-page discussion of his findings, including consideration of the assertion made by Defendants that Seroquel and Wellbutrin are prone to abuse and the reasons why the literature does not support such a finding, and why alternative treatments

are not appropriate for Plaintiff. ECF No. 175-2 at 2-21. By contrast, Dr. Exum's report was <u>four pages</u>, see ECF No. 175-1 at 2-5, and his diagnosis and treatment recommendations relied on impressions gleaned from his one short interview with Plaintiff for this case and Plaintiff's self-reported medical history. Dr. Exum's report did not contain a section, like that of Dr. Roitman's report, which explicitly discussed, as directed by this Court, the benefits, side effects, and potential for abuse of the relevant medications at issue (Wellbutrin and Seroquel) and how they might benefit or not Mr. Porretti. Dr. Exum's report did not contain any discussion of Mr. Porretti's prior experience with these medications as documented by prior psychiatric professionals in Porretti's extensive medical records. While acknowledging the crucial aspect of such information to an accurate professional diagnosis and to addressing the issue before the Court, Dr. Exum could offer no credible explanation for his professional failure to undertake such a review and analysis. In other words, Dr. Exum diagnosed Plaintiff with substance use disorders, as well as Antisocial Personality Disorder traits and Borderline Personality Disorder traits and recommended no medication without considering and reviewing the literature on such medications, without considering Mr. Porretti's prior experience with the medications at issue, and without reviewing Plaintiff's extensive (approximately 700 pages) medical records—a review and evaluation that is acknowledged in the profession as crucial to a full and complete diagnosis. By contrast, Dr. Roitman relied on psychiatric history questionnaires and a symptom checklist administered to Plaintiff, his two and a half hour examination, records from prior psychiatric evaluations and treatment at the Lakes Crossing forensic facility, documentation pertaining to a prior hospitalization at Southern Nevada Adult Mental Health Services psychiatric hospital, competency evaluations by psychiatric and psychological examiners, and recollections of treatment and psychiatric progress notes during his direct treatment of Porretti to reach his conclusions. Dr. Roitman also relied upon an evaluation of the current literature and studies on the relevant medications, and, importantly, Mr. Porretti's documented history with them.

The experts offered different recommendations for treatment. Dr. Exum's treatment recommendation was Cognitive Behavioral Therapy and/or Dialectical Behavior Therapy, based on the conclusion that because Plaintiff stated his symptoms "did not fully abate" in the past with

1    medication, medication is not therefore recommended. Id. at 5. Notably, Dr. Exum's report did not
2    explicitly consider, as noted, whether a prescription for Wellbutrin and Seroquel is medically
3    necessary in light of Porretti's history, prior medications used, diagnoses, and current symptoms,
4    nor the existence and efficacy of potential alternative medications and/or treatments, as mandated
5    by the Court's previous Order. See ECF No. 130 at 2.

6    Dr. Roitman's report *did* follow these directives, concluding that Plaintiff "has a bona fide
7    neuropsychiatric illness that can be treated by . . . Wellbutrin and Seroquel, at the doses he was
8    prescribed before." ECF No. 175-2 at 21. In his report, Dr. Roitman considers case reports of
9    Seroquel and Wellbutrin abuse amongst substance users but states that these case reports have not
10   otherwise explained "the mechanism or nature of their abusive mechanisms," id. at 16, as "the
11   reason why abusers report being high is not substantiated by the science of the chemical as is the
12   case with opioids, cocaine, methamphetamine, benzodiazepines, hallucinogens and other drugs of
13   abuse," id. at 15 (citation omitted). Yet even if the discouragement of these medications had a
14   legitimate foundation in the scientific literature, Dr. Roitman further asserts that they would still
15   be indicated for Plaintiff's treatment, as he has demonstrated success with them and "severe side
16   effects to the other antipsychotics indicated for his psychotic symptoms, paranoia, tics, insomnia
17   and depression." Id. at 17. Moreover, Dr. Roitman notes his treatment recommendation is informed
18   by the fact that Plaintiff himself never demonstrated a history of Seroquel abuse and that it helped
19   to alleviate his symptoms. Id.  This conclusion is further supported by Dr. Roitman's personal
20   experience treating Plaintiff; he testified that he first started treating Plaintiff in 2004 and estimated
21   that he had examined him approximately fifteen to twenty times since then.

22   Dr. Exum, on the contrary, testified that he was not even "directly" aware that Plaintiff's
23   prior diagnoses had led to him being prescribed Wellbutrin and Seroquel. This is to say that Dr.
24   Exum did not actually review or read **any** of the extensive documentation of other treatment
25   providers with respect to the effects of various treatments in addressing Mr. Porretti's mental
26   health issues. Porretti told Dr. Exum in the evaluation interview that he had been hospitalized and
27   treated in and out of prisons on numerous occasions over the past fifteen years. The Court finds it
28   troubling that Dr. Exum would offer his opinion about the appropriateness of these medications

5

1 despite being aware of an extensive prior medical history and the associated records and choosing
2 not to request and review these records prior to diagnosing Mr. Porretti. Nonetheless, Dr. Exum
3 testified that he did not find Wellbutrin and Seroquel to be necessary to Plaintiff's current treatment
4 because he found, based on Plaintiff's self-report, that Plaintiff's symptoms were not completely
5 controlled by those medications in the past and because his current diagnosis of personality and
6 substance use disorders did not support prescribing those medications. Yet Dr. Roitman found,
7 after both extensive review of the records as well as his own experience treating Plaintiff over the
8 past fifteen years, that Plaintiff suffers in part from neuropsychiatric illnesses which "remain[]
9 immutable" and that Cognitive Behavioral Therapy cannot treat psychosis and Obsessive-
10 Compulsive Disorder. He further found based upon his own experience with Porretti and the
11 history of his treatment that these medications did substantially benefit him.

12 The Court reaches opposite findings as to the experts' recommended treatment approach.
13 The Court finds that Dr. Roitman's thorough and thoughtful examination of Plaintiff's entire
14 medical history in compliance with the Court's prior Order as well as his personal history treating
15 Plaintiff, and his testimony resulted in a credible opinion based on acceptable professional
16 standards and all of the relevant documentation as to Plaintiff's diagnosis and the consequent
17 treatment regimen. The Court does not find Dr. Exum's diagnosis and proposed treatment plan to
18 be credible and based upon appropriate professional standards. Dr. Exum's evaluation was based
19 on a single interview with Plaintiff. By Dr. Exum's own estimation, Plaintiff is a "very poor
20 historian," at best. If Dr. Exum found Plaintiff's self-report of his medical history to be "very
21 poor," it defies reason why he would then rely *exclusively* on that self-report to diagnosis and
22 recommend treatment for Plaintiff moving forward, especially given the extensive medical records
23 that he could have and should have reviewed.

24 Finally, the Court reiterates its finding based upon the testimony that Dr. Roitman provided
25 credible testimony and that Dr. Exum did not. The Court finds that Dr. Exum provided partial and
26 biased testimony designed to support the litigation position of the Defendants.

27 The Court therefore relies on Dr. Roitman's report and testimony to find that Plaintiff
28 suffers from Neurodevelopmental Disorders including Attention Deficit Hyperactivity Disorder,

Tourette's Disorder, and Obsessive-Compulsive Disorder. ECF No. 175-2 at 10. Plaintiff further suffers from Schizophrenia with paranoia and non-fixed delusions, Malingering incompetency, Antisocial behaviors, and Substance Use Disorder. Id. at 10-11.  The Court adopts Dr. Roitman's conclusion that Seroquel and Wellbutrin are the medications best-suited to treat the symptoms resulting from these ailments.

### IV.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the Petitioner is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a Petitioner must establish four elements: "(1) a likelihood of success on the merits, (2) that the Petitioner will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014) (citing Winter, 555 U.S. at 20). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a Petitioner can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the Petitioner's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserve[s] the status quo pending a determination of the action on the merits. A mandatory injunction orders a responsible party to take action." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878-79 (9th Cir. 2009). A mandatory injunction "goes well beyond maintaining the status quo *pendente lite* [and] is particularly disfavored. The district court should deny such relief unless the facts and law clearly favor the moving party." Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (alteration in original) (citation and internal quotation marks omitted). "The status quo means the last,

uncontested status which preceded the pending controversy." N.D. ex rel. Parents v. Haw. Dep't of Educ., 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (citation and internal quotation marks omitted).

## V.   DISCUSSION

### a.   Motion for Preliminary Injunction

The Court finds that Plaintiff satisfies the factors justifying preliminary injunctive relief. As an initial matter, the Court finds this preliminary injunction to be prohibitive. The "last, uncontested status which preceded the pending controversy" was prior to May 2017. Plaintiff had been receiving Seroquel and Wellbutrin as prescribed by NDOC physicians. Porretti was then informed that these medications had been removed from NDOC's formulary and that he would be receiving substitute or equivalent medications. Based upon this medication change, *inter alia*, Plaintiff initiated this action. He sought injunctive relief, prior to being represented by counsel, through a letter to the Court which the Court construed as a motion for preliminary injunction. The Court considers the potential injunction to be prohibitive because it sought to preserve the status quo prior to Defendants unilateral decision to abruptly cease his medications. However, as the relief granted might be considered new treatment, the Court applies the higher standard for a mandatory injunction to the analysis here. Plaintiff succeeds under either standard.

### i.   Likelihood of Success on the Merits

To establish an Eighth Amendment claim against prison officials for medical treatment, an incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has established a two-part test for deliberate indifference. First, the plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted)).   Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The defendant's indifference to or interference with the plaintiff's medical

1    care must be intentional; negligence will not suffice to state a deliberate indifference claim. Jett,
2    439 F.3d at 1096. Further, the plaintiff must show that harm resulted from the defendant's
3    indifference, although the harm need not necessarily be substantial. Id.

4    The Court finds that Plaintiff is likely to succeed on the merits of his Eighth Amendment
5    claim, incorporating by reference its reasoning detailed in its previous Order. ECF No. 106 at 6-7.
6    The findings in the record for both orders support a further finding that evidence clearly favors an
7    injunction here. Plaintiff has satisfied the two-part test for deliberate indifference. First, he has
8    established a serious medical need in the form of his chronic and severe mental illness. This finding
9    is uncontradicted or opposed by the Defendants.

10   With regard to the deliberate indifference prong of the two-part test, the Court finds that
11   "this is not a case of dueling experts." Edmo v. Corizon, Inc., 935 F.3d 757, 787 (9th Cir. 2019),
12   stay denied, ID DOC v. Edmo, No. 19A1038, 2020 WL 2569747, at *1 (U.S. May 21, 2020).
13   "Typically, '[a] difference of opinion between a physician and the prisoner—or between medical
14   professionals—concerning what medical care is appropriate does not amount to deliberate
15   indifference.' But that is true only if the dueling opinions are medically acceptable under the
16   circumstances." Id. at 786 (citing Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (a mere
17   "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate
18   indifference, but not if the chosen course of treatment was medically unacceptable under the
19   circumstances") (alterations in original) (internal quotations omitted)). "'In deciding whether there
20   has been deliberate indifference to an inmate's serious medical needs, we need not defer to the
21   judgment of prison doctors or administrators.'" Id. (quoting Hunt v. Dental Dep't, 865 F.2d 198,
22   200 (9th Cir. 1989)). "Nor does it suffice for 'correctional administrators wishing to avoid
23   treatment . . . simply to find a single practitioner willing to attest that some well-accepted treatment
24   is not necessary.'" Id. (quoting Kosilek v. Spencer, 774 F.3d 63, 90 n.12 (1st Cir. 2014)). "In the
25   final analysis under the Eighth Amendment, we must determine, considering the record, the
26   judgments of prison medical officials, and the views of prudent professionals in the field, whether
27   the treatment decision of responsible prison authorities was medically acceptable." Id.

28   A review of the record reveals that Dr. Exum's evaluation did not conform to that of a

"prudent professional[] in the field," while Dr. Roitman's did. Consequently, the competing conclusions offered by Drs. Exum and Roitman do not constitute "a mere 'difference of medical opinion'" between medical professionals. Toguchi, 391 F.3d at 1058 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). Rather, for the reasons discussed in Section III *supra*, the Court finds that Dr. Exum's opinion is "medically unacceptable under the circumstances." Edmo, 935 F.3d at 786 (citation omitted). In addition to these previous findings, the Court also finds that Dr. Exum conducted, at best, a cursory evaluation of Mr. Porretti. He ignored hundreds of pages of records, which documented Porretti's medical history and, importantly, his history of medications and their effectiveness in treating his mental illness. His testimony as to why he did not pursue or examine these records was wholly incredible. The Court finds that he knew that these records existed and that he should have reviewed them but chose not to review them. The Court further finds that he understood that had he reviewed records documenting a broader spectrum of symptoms than those he observed in his interview and indicating treatment success with medications at issue in this case that he would have had to provide a different opinion. The Court also finds that he disregarded the directions of the Court with respect to, *inter alia*, considering Mr. Porretti's medical history and reviewing professional relevant literature on the subject medications. His report and testimony were biased towards supporting Defendants' litigation position. For all of these reasons and those previously noted, Dr. Exum's "expert opinion" is medically unacceptable.

Therefore, Defendants' reliance on Drs. Carroll and Exum's opinions to provide a post hoc explanation for continuing to deprive Plaintiff of his Seroquel and Wellbutrin medications does not rebut the finding by the Court, that Defendants discontinued Plaintiff's medication solely as a consequence of administrative policy, without the "recommendation of a psychiatric health care provider" and "absent any evidence whatsoever that Plaintiff himself was abusing, selling, or otherwise misusing these medications." ECF No. 106 at 6. The Defendants know that Mr. Porretti continues to suffer from significant and severe psychological symptoms and that Mr. Porretti has been successfully treated previously with the subject medications, but they have decided to withhold these medications nonetheless. The Court finds that the Defendants' intentional and

1  unjustified discontinuation of these medications in light of Plaintiff's well-documented mental
2  illness constitutes deliberate indifference, which has resulted in an exacerbation of Plaintiff's
3  condition, as noted by Dr. Roitman in his testimony and Plaintiff himself, in the many and
4  increasingly frantic filings he has made with this Court. The Court further notes that the records
5  of NDOC reflect the observations of other staff who have documented Mr. Porretti's worsening
6  symptoms. All of these findings and the law very clearly support the imposition of an injunction
7  in this case. The Court further finds that this deliberate indifference has continued in that Mr.
8  Porretti has not even been provided regular cognitive or behavioral treatment as recommended by
9  NDOC's own doctors.  Indeed, without an injunction in this case, the record supports the Court's
10 finding that Mr. Porretti would continue to receive minimal if any treatment at all.

### ii. Irreparable Harm

The Court incorporates by reference its reasoning from its previous Order to find that Plaintiff has demonstrated a substantial likelihood of irreparable harm and that Plaintiff would be severely damaged if an injunction did not issue. As the Court noted, Plaintiff suffers from "persistent and severe" psychotic symptoms and has a history of suicide attempts. The increased severity of those symptoms since the Court's previous Order illustrates the extent to which being deprived of these medications has already resulted in substantial, ongoing harm to Plaintiff. The longer he is deprived, the more symptomatic Plaintiff becomes, resulting in an increased risk to his health and safety given his history of self-harm.

The Court again emphasizes here that there is a need for outside oversight of Mr. Porretti's treatment because NDOC physicians up to now have not even provided Porretti with their own course of recommended treatment. They have effectively blamed him for his mental illness and the difficulty of treating him. The Court finds that the symptoms of Mr. Porretti's significant mental illness cannot be used as an excuse to provide essentially no treatment, as has occurred here. The Court does not reach this finding lightly but only after consideration of the testimony of two NDOC physicians, an independent psychiatrist, and a review of the extensive records in this case and multiple evidentiary hearings.

The Court further finds, to the extent such a finding is necessary, that Mr. Porretti would suffer very serious or extreme damage to his mental health should this relief not be imposed. Mr. Porretti currently suffers from a series of severe and debilitating symptoms including: involuntary abnormal movements and corporalalia (verbal tics), auditory hallucinations, paranoid delusions, depression, compulsive ingestion of metal parts and obsessive compulsivity. Mr. Porretti's awareness of his own symptoms and his continued experience of them has exacerbated his anxiety, paranoid delusions and compulsive behaviors. The fact that Mr. Porretti has not received these medications in over two years should not be viewed as evidence that he can and should go on without these medications or that is he not suffering without them. The length of the litigation is directly related to his symptoms and how they affected his *pro se* filings. i.e. his ability to clearly communicate his positions and provide supporting documentation, and the delay in pro bono counsel finally being found—more than six months after the Court had referred the case for assignment. Moreover, the Court notes that this case is unlikely to proceed to trial on the merits in the near term given the global pandemic and its restrictive impact on civil trials in the courthouse. All of these factors further support the need for intervention now. The Court finds that severe damage will continue to be done to Mr. Porretti's health without injunctive relief.

### iii. Balance of Equities

The Court finds that the balance of the equities tips in Plaintiff's favor. Plaintiff's ongoing and increasingly severe mental health symptoms as well as denial of the medication that has historically improved Plaintiff's condition, overwhelmingly outweighs the logistical and financial burdens Defendants may face as a consequence of the relief granted in this Order. The Court has previously recognized that Defendants are constitutionally obligated to provide adequate medical treatment.

### iv. Public Interest

Finally, the public interest favors Plaintiff. Prisons must be operated in compliance with a standard of care that conforms to the Constitution's mandates. The public has an interest in ensuring the continued dignity of those incarcerated in federal prisons. Inherent in that dignity is the recognition of serious medical needs, and their adequate and effective treatment.

### b. Nature of Relief Granted

The Court finds that the appropriate relief based on the foregoing is to order NDOC to provide Plaintiff prescriptions for Wellbutrin and Seroquel. The Court orders that the NDOC development a treatment plant with the prescription and monitoring of Mr. Porretti based upon Dr. Roitman's report and diagnosis. This treatment plan shall be submitted to the Court and Mr. Porretti and his counsel within fourteen (14) days of the filing of this order. The Court finds this relief to be the narrowest and least intrusive form of relief. NDOC has treatment providers who have experience with these medications. NDOC has previously administered these medications to Mr. Porretti. These providers will be involved in the development and implementation of the treatment plan. The Court is not ordering that these medications be made generally available to all inmates exhibiting Mr. Porretti's symptoms. The Court does not find, based upon the testimony of NDOC's own experts, that this treatment plan would disrupt the normal and regular operation of the facility where Mr. Porretti is housed. At this time, the Court does not order that an outside or independent physician directly administer Mr. Porretti's treatment. The treating provider will be required, however, to consult Dr. Roitman's report and review all of Mr. Porretti's medical records. The Court finds that the development and implementation of a treatment plan consistent with this Court's order would address Mr. Porretti's medical needs as required by the Eighth Amendment.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Preliminary Injunction (ECF Nos. 32, 33) is **GRANTED**. Defendants must submit a treatment plan within **fourteen (14) days** of this order. The NDOC shall be prepared upon approval of the treatment plan by the Court to immediately implement it by providing Mr. Porretti with the subject medications (Wellbutrin and Seroquel).

DATED: May 31, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**